# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| POLYANNA SCHULER, | ) | CASE NO. 5:16-cv-1466 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| VILLAGE OF NEWCOMERSTOWN, | ) | |
| et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion of defendants Newcomerstown Police Department ("NPD"), NPD Officer Bryan Eubanks ("Eubanks"), NPD Chief Gary Holland ("Holland"), and the Village of Newcomerstown ("Village") (collectively "Newcomerstown defendants" or "defendants") for partial judgment on the pleadings. (Doc. No. 9 ["Mot."].) Plaintiff Polyanna Schuler ("plaintiff" or "Schuler") has opposed the motion (Doc. No. 11 ["Opp'n"]), to which defendants replied (Doc. No. 12 ["Reply"]). For the reasons that follow, defendants' motion for partial judgment on the pleadings is granted.

## I.  BACKGROUND

### A.  The Complaint

This case arises from a dispute between plaintiff and defendants Emerald Barnes ("Barnes") and Susan Addy ("Addy") concerning a vehicle. During all relevant times, defendant Holland was chief of the NPD, and Eubanks was an NPD officer.[1] The following factual background is taken from plaintiff's complaint. (Doc. No. 1 (Complaint ["Compl.]).)

On or about August 19, 2014, plaintiff and Barnes purchased a 2013 Hyundai Sonata ("vehicle") from Decosky Ford, Inc. The purchase was financed by Wells Fargo, and plaintiff signed as the buyer and Barnes as the co-buyer.  (*Id.* ¶¶ 17-18.) The vehicle was titled to Barnes, and she made the payments and possessed the vehicle until December 2014. (*Id.* ¶ 19; Doc. No. 8-1.)

Addy took possession of the vehicle from Barnes in January 2015 and began making the payments because Barnes was moving to Japan. (*Id.* ¶¶ 20-21.) In February 2015, plaintiff contacted Wells Fargo and requested that her name be added to the title of the vehicle. (*Id.* ¶ 22.) On April 17, 2015, plaintiff "reclaimed" the vehicle from Addy. (*Id.* ¶ 24.) That same day, NPD Officer Jennifer Lowery[2] ("Lowery") contacted plaintiff regarding the vehicle, as did Coshocton County Sheriff Deputy Mark Sharrock[3] ("Sharrock"). According to the complaint, Sharrock told plaintiff that the NPD "was threatening to list the vehicle as stolen and issue a felony warrant for [p]laintiff's arrest." (*Id.* ¶¶ 24-25.) Based on the call from Lowery and "threats of felony

---

[1] Holland and Eubanks are sued in both their individual and official capacities. (Doc. No. 1 (Complaint ["Compl.]) ¶¶ 9, 10.) A suit under § 1983 against a defendant in his "official capacity" is equivalent to a suit against the local government entity. *Leach v. Shelby Cnty. Sheriff,* 891 F.2d 1241, 1245 (6th Cir. 1989).

[2] Lowery is not a defendant in this case.

[3] Sharrock is not a defendant in this case.

charges" by the NPD, plaintiff drove to the NPD and surrendered the vehicle. At the NPD, plaintiff alleges that she "was again threatened with felony charges and incarceration" by unknown NPD officers. (*Id.* ¶ 26.) After plaintiff left the NPD, she was stopped by an unknown NPD officer to obtain any "extra keys" to the vehicle. Plaintiff alleges that the sole basis for the stop was to obtain the keys and plaintiff was not issued a citation. (*Id.* ¶ 27.)

Lowery submitted a "prosecution packet" to the Tuscawaras County Prosecutor in connection with the events of April 17, 2015. (*Id.* ¶ 28.) The prosecutor declined to prosecute because the matter appeared to be civil in nature and there was no evidence to support felony charges. (*Id.* ¶ 30; Doc. No. 1-3.)

In June 2015, Addy contacted plaintiff and requested that she take possession of the vehicle, and plaintiff did so. (*Id.* ¶ 29.) In July 2015, the title of the vehicle was modified to include plaintiff's name, and plaintiff made the payments to Wells Fargo. (*Id.* ¶¶ 31, 32; Doc. No. 1-4.)

Barnes returned to Ohio in January 2016 and requested that plaintiff return the vehicle to her, and plaintiff agreed to do so if plaintiff's name was removed from the title and Wells Fargo loan. (*Id.* ¶¶ 35, 36.) Barnes, however, was not able to obtain a loan for the vehicle herself, and plaintiff and Barnes reached an impasse. (*Id.* ¶¶ 36-37.) Barnes advised plaintiff she would report the vehicle as stolen since the vehicle was titled in her name. (*Id.* ¶ 38.)

Plaintiff claims that Holland called her on February 2, 2016 "with the express purpose of intimidating [p]laintiff into surrendering the vehicle" to Barnes, and "renewed threats of criminal prosecution and arrest." (*Id.* ¶ 39.) Plaintiff does not allege that Eubanks ever spoke directly to her regarding the vehicle, but that her attorney spoke to Eubanks. According to the complaint,

Eubanks stated to plaintiff's attorney that the NPD would proceed with charges against plaintiff. (*Id.* ¶¶ 39, 40.) The prosecutor's office, however, advised plaintiff's attorney that charges would not be brought. (*Id.* ¶ 41.) When plaintiff's attorney contacted Holland and requested copies of the warrants for plaintiff's arrest and seizure of the vehicle, Holland admitted that there were no warrants, and "confessed" that Holland had permitted Eubanks to "bluff" plaintiff in an effort to have her turn over the vehicle. Plaintiff also alleges that Holland admitted he contacted Wells Fargo to obtain plaintiff's information regarding the vehicle, and told her attorney that he would not allow Eubanks to press charges. (*Id.* ¶¶ 43-45.)

Based on these facts, plaintiff filed a 10 count complaint against the Newcomerstown defendants, Addy, Barnes, and "unknown individuals"—three federal claims alleging violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (counts one, eight, and nine), six mixed federal and state claims[4] (counts two through seven), and one state claim (count 10) alleging intentional infliction of emotional distress.

**B. Motion for Judgment on the Pleadings**

The Newcomerstown defendants move for judgment on multiple bases. First, defendants move for dismissal of plaintiff's federal and state law claims against NPD on the grounds that the NPD is not *sui juris*. Second, defendants move for dismissal of plaintiff's state law claims

---

[4] *See* Opp'n at 104.

against the Village, Holland, and Eubanks (except the conspiracy claims and count 10[5]) on the pleadings, and on the ground that they are immune from suit under Ohio Rev. Code § 2744. Third, defendants move for judgment on plaintiff's federal claims (except the conspiracy claims) on the pleadings, and on the ground that they are entitled to qualified immunity.

The Court will first address defendants' motion as to plaintiff's federal claims, and then plaintiff's state law claims.

## II. PRELIMINARY MATTERS

### A. The NPD is not sui juris

The Newcomerstown defendants move for dismissal of NPD on the grounds that it is not *sui juris* absent a positive statutory authority, and Ohio does not have a law that permits parties to sue local law enforcement agencies directly. (Mot. at 74[6] (citing *Elkins v. Summit Cnty., Ohio*, No. 5:06-CV-3004, 2008 WL 622038, at *6 (N.D. Ohio Mar. 5, 2008) (*citing Papp v. Snyder*, 81 F. Supp. 2d 852, 857 n.4 (N.D. Ohio 2000)).) Plaintiff concedes that the NPD is not *sui juris*. (Opp'n at 102-03.)

---

[5] In count ten, plaintiff alleges that the defendants intentionally, and with malice, inflicted emotional distress on plaintiff by their conduct. Defendants did not move for judgment on the pleadings with respect to plaintiff's state law claim for intentional infliction of emotional distress. Plaintiff's opposition notes that defendants' motion does not address count ten. In their reply brief, however, defendants contend that plaintiff's claim in count ten fails as a matter of law. "'It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition.'" *Curcio Webb LLC, v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1207 n.28 (S.D. Ohio 2005) (quoting *In re: Firstenergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (6th Cir. 2004) (further citation omitted)). Because defendants did not raise the arguments made in their reply brief in their original motion, plaintiff could not respond to those arguments in her opposition. Thus, defendants' arguments with respect to count ten in their reply fails for procedural reasons and, to the extent that defendants' reply brief seeks judgment on the pleadings with respect to count ten, the motion is denied without prejudice.

[6] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

The defendants have correctly stated the law with respect to this issue, and the Court finds that the NPD is not *sui juris*. *See Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007). Accordingly, defendant Newcomerstown Police Department is dismissed from this case in its entirety with prejudice, and the Court will not further address plaintiff's claims against the NPD.

### B.  Defendants Addy and Barnes

The Court's ruling herein does not address plaintiff's claims against defendants Addy and Barnes, and may not be construed as a ruling on plaintiff's claims against those defendants. That said, the docket in this case does not reflect that defendants Addy or Barnes have been served with the complaint in accordance with the requirements of the Fed. R. Civ. P. 4(m). Plaintiff shall have until April 17, 2017, to show cause why defendants Addy and Barnes should not be dismissed from this action as a consequence of plaintiff's failure to serve these defendants and prosecute her claims against them. *See Warrior Imports, Inc. v. 2 Crave*, 317 F.R.D. 66, 69 (N.D. Ohio 2016).

### C.  Leave to Amend

In opposing defendants' motion, plaintiff states that she believes her complaint sets forth a clear and concise recitation of her claims. (Opp'n at 113.) That said, plaintiff offered to amend the complaint if, in the Court's view, a more carefully drafted complaint might state a claim. (*Id.*) Plaintiff does not indicate, however, what allegations, if any, would be clarified by an amended complaint. Plaintiff has not moved to amend, and defendants have not moved for a more definite statement of the complaint. The Court finds that there is no basis upon which to invite plaintiff to amend her complaint before ruling on defendants' motion.

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)).

"To survive a motion to dismiss [or for judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks and citations omitted) (emphasis in original). "The motion is granted when no

material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In considering a Rule 12(c) motion, the allegations in the complaint are the Court's primary focus. The Court may also consider the answer, documents attached as exhibits to the pleadings, and "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[.]'" *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836-37 (S.D. Ohio 2012) (quoting *Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (further citation omitted)).

## IV.  PLAINTIFF'S FEDERAL CLAIMS

Pursuant to 42 U.S.C. § 1983, plaintiff alleges that certain rights under the Fourth Amendment of the United States Constitution were violated by the defendants. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Title 42 U.S.C. § 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

"The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived [her] of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived [her]

of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.'" *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S. Ct. 1598, 1604, 26 L. Ed. 2d 142 (1970). The second element with respect to Holland and Eubanks is not an issue in this case.

Turning to the first element, "[t]he Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]'" *Bletz v. Gribble,* 641 F.3d 743, 754 (6th Cir. 2011) (quoting U.S. Const. amend. IV). A seizure occurs when "'by means of physical force or a show of authority, [an individual's] freedom of movement is restrained.'" *Id.* (quoting *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). To state a claim under the Fourth Amendment, a plaintiff must allege that: (1) the defendant's actions constituted a search or seizure within the meaning of the Fourth Amendment; and (2) defendant's actions were unreasonable in light of the surrounding circumstances. *See Collins v. Nagle,* 892 F.2d 489, 493-94 (6th Cir. 1989).

**A. Count One**[7]

Plaintiff alleges multiple Fourth Amendment violations against different defendants under count one.

First, plaintiff claims that: (1) Holland violated her right to be free from unreasonable seizure of property by refusing to allow plaintiff to reclaim the vehicle in possession of Addy (purportedly a relative of Holland (Compl. ¶ 23)), and threatening her with criminal prosecution if she did so (*id.* ¶ 49); and (2) that Holland and Eubanks violated her right to be free from

---

[7] Compl. ¶¶ 48-54.

unreasonable seizure of property by harassing her with unlawful threats of criminal prosecution which prevented her use of the vehicle (*id.* ¶ 53).

Defendants argue that they are entitled to judgment on these claims because threats alone do not establish a cognizable claim under § 1983. Plaintiff "agrees with this legal conclusion[,]" but contends that this law does not foreclose plaintiff's allegations because defendants did not only make verbal threats, but also engaged in threatening behavior, an unlawful traffic stop, and sought to initiate a meritless criminal case against her. (Opp'n at 106 (citing Compl. ¶¶ 24-28 ("2015 events") and 39-45 ("2016 events")).) Without citing a single case in support, plaintiff contends that these allegations support a civil rights violation. *Id.*

With the exception of plaintiff's conspiracy claims in counts 3 and 4, which are not now before the Court, there are no allegations in the complaint that Holland and Eubanks did anything more than verbally threaten plaintiff with criminal prosecution. (*See* Compl. ¶¶ 39-45.) Mere words, even spoken threats of serious harm or arrest, however, do not constitute an infringement of a constitutional right and are not actionable under § 1983. *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) (threats of arrest alone do not support a constitutional claim) (citing *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) ("Appellant's asserted fear from [verbal threats], however, is not an actual infringement of a constitutional right, and thus, it is not actionable under section 1983.")); *Meyers v. Mitrovich*, No. 1:14CV1604, 2015 WL 413804, at *13 (N.D. Ohio Jan. 30, 2015) (fear from threats alone is not an actual infringement of a constitutional right) (citing *Emmons*, 874 F.2d at 353). Defendants are entitled to judgment on the pleadings with respect to plaintiff's Fourth Amendment claim against Holland and Eubanks regarding the 2016 events.

Plaintiff's factual allegations concerning the 2015 events do not allege that Holland or Eubanks were involved in the telephone calls made to plaintiff, her surrender of the vehicle to the NPD, the traffic stop by an unknown NPD officer for the vehicle's keys, or the "prosecution packet" prepared by Lowery. (*See* Compl. ¶¶ 24-28.) To the extent that plaintiff's Fourth Amendment claim against Holland and Eubanks regarding the 2015 events is based upon *respondeat superior* liability, that claim fails on the pleadings.

Supervisors are not liable for the unconstitutional conduct of subordinates unless the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in" the subordinate's unconstitutional conduct. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen*, 433 F.3d at 470. These prerequisites cannot be established as to Holland and Eubanks with respect to the 2015 events because plaintiff's factual allegations concerning the 2015 events include only Lowery (who is not a defendant in this action and the constitutionality of her conduct is not at issue) and unknown NPD officers or employees. (*See* Compl. ¶¶ 24-28.)

Defendants are entitled to judgment on the pleadings with respect to these Fourth Amendment claims against Holland and Eubanks.

Second, plaintiff alleges in count 1 that Holland violated her right to be free from unreasonable searches and seizures under the Fourth Amendment by obtaining her private financial information from Wells Fargo regarding the vehicle without a warrant, criminal investigation, or probable cause (*Id*. ¶ 52). Defendants argue that they are entitled to judgment as a matter of law with respect to plaintiff's federal claim for invasion of privacy because: (1) the

11

documents were obtained by a grand jury subpoena (a copy of which attached to defendant's answer at Doc. No. 8-2); and (2) even if the documents were not obtained by grand jury subpoena, individuals do not have a privacy interest protected by the Fourth Amendment with respect to papers possessed by a financial institution. (*See* Mot. at 75-76.)

In response, plaintiff ignores defendants' argument regarding the subpoena, and argues that defendants' reliance on *U.S. v. Miller*[8] is misplaced: "In *Miller*, the Supreme Court was 'governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of [an individual].'" (Opp'n at 105 (quoting *Miller*, 425 U.S. at 444).) Apparently in an attempt to distinguish *Miller*, plaintiff contends that the Court is required to accept as true plaintiff's allegations that her records were "obtained in the absence of a warrant, criminal investigation, or probable cause." (*Id*. at 105 (citing Compl. ¶ 43).) Thus, plaintiff argues, the "[d]efendants' argument relative to the legality of Chief Holland's conduct is without merit." (*Id.* at 104-05.) Essentially, plaintiff argues that the Court should not consider documents properly before the Court on a motion for judgment on the pleadings—or other factual allegations in her complaint—simply because the complaint contains a single allegation to the contrary.

---

[8] *United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624, 48 L. Ed. 2d 71 (1976) ("This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.") (citations omitted).

12

While it is true that when considering a motion for judgment on the pleadings the Court is required to accept as true all the well-pleaded material allegations in the complaint, the Court is not required to accept legal conclusions, unwarranted allegations, or factual inferences in the complaint "'contradicted by public records and other evidentiary materials of which the Court may take judicial notice.'" *Marshall v. Nationstar Mortg., LLC*, No. 1:12-CV-852, 2015 WL 1042197, at *3 (W.D. Mich. Mar. 10, 2015) (quoting *McGee v. City of Cincinnati Police Dep't*, No. 1:06–CV–726, 2007 WL 1169374, at *2 (S.D. Ohio Apr. 18, 2007)); *Mixon*, 193 F.3d at 400.

Plaintiff claims that a prosecution packet was prepared by Lowery and provided to the Tuscarawas County prosecutor (Compl. ¶ 28), that the prosecutor declined to prosecute based on insufficient evidence (*id.* ¶ 30), and attaches the prosecutor's letter to her complaint (Doc. No. 1-3). Defendants' answer attaches the subpoena issued to Wells Fargo in connection with that inquiry, which states that the required information should be provided to Lowery at the NPD. (Doc. No. 8-2.) The subpoena may be properly considered by the Court in connection with defendants' motion. *McGath*, 848 F. Supp. 2d at 836-37. But even absent a subpoena, plaintiff does not have a Fourth Amendment privacy interest in documents and information maintained by Wells Fargo. *See Miller*, 425 U.S. at 440-43; *see also Crawford v. United States Dep't of the Treasury*, No. 3:15-CV-250, 2015 WL 5697552, at *11 (S.D. Ohio Sept. 29, 2015) (citing *Miller*) (there is no reasonable expectation of privacy in information contained in bank records because the records only contain information voluntarily conveyed to the banks and there is no legitimate expectation of privacy in information voluntarily turned over to third parties).

Defendants are entitled to judgment with respect to plaintiff's claim in count 1 that Holland violated the Fourth Amendment by obtaining her vehicle loan information from Wells Fargo.

## B.  Count Two[9]

Count two alleges a federal abuse of process claim against Holland, claiming he violated the Fourth Amendment by threating plaintiff with criminal charges and submitting a "prosecution packet" to the prosecutor without probable cause in order to intimidate her into surrendering the vehicle. Defendants move for judgment on this claim on the ground that an abuse of process claim is not cognizable under § 1983. (Mot. at 77.)

The Sixth Circuit "has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983." *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015) (citing *Rapp v. Dutcher,* 557 F. App'x 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit.") (further citation omitted)). In opposing the motion, plaintiff points the Court to no legal authority showing that an abuse of process claim is cognizable under § 1983 in the Sixth Circuit.

Defendants' motion for judgment as to all defendants on plaintiff's § 1983 claim for abuse of process is granted. *See Grise v. Allen*, No. 5:11-195-KKC, 2016 WL 1261077, at *6 (E.D. Ky. Mar. 30, 2016) (citing *Moore,* 612 F. App'x at 823 (further citation omitted)).

---

[9] Compl. ¶¶ 55-57.

### C. Count Three[10]

Count three alleges a Fourth Amendment malicious prosecution claim against Holland, Eubanks, Barnes, and Addy, and includes a conspiracy allegation. Defendants argue that, because there are no allegations in the complaint that criminal proceedings were ever initiated against plaintiff, defendants are entitled to judgment on the pleadings. In response, plaintiff does not oppose defendant's arguments but, instead, observes that "[d]efendants have accurately articulated the legal standards associated with . . . § 1983 civil claims . . . for malicious prosecution, as well as the facts set forth in [p]laintiff's Complaint. Accordingly, [p]laintiff would merely defer to the Court relative to the federal . . . claims presented in Count Three." (Opp'n at 107.)

To succeed on a malicious prosecution claim premised upon a violation of the Fourth Amendment, a plaintiff must show that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding plaintiff suffered a deprivation of liberty under the Fourth Amendment apart from the initial seizure; and (4) the criminal proceeding was resolved in plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). In order for plaintiff to avoid an adverse ruling on a motion for judgment on the pleadings, the complaint must set forth allegations sufficient to make out the elements of a right to relief. *See Grizzell v. City of Columbus, Div. of Police*, No. C2-02-883, 2003 WL 21799899, at *1 (S.D. Ohio July 11, 2003) (citing *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983)).

---

[10] Compl. ¶¶ 58-62.

15

There are no allegations that criminal proceedings were ever initiated against plaintiff. Indeed, the complaint specifically alleges that the prosecutor reviewed the information regarding the events at issue and declined to prosecute (Comp. ¶¶ 30, 41), and that Holland confirmed that charges would not be brought (*id*. ¶ 45). In the absence of a criminal prosecution, plaintiff cannot establish the elements of a Fourth Amendment claim for malicious prosecution and, in fact, has made no effort to do so, effectively conceding that dismissal of this claim is appropriate.

Accordingly, defendants' motion as to plaintiff's § 1983 malicious prosecution claim is granted.

### D.  Count Four[11]

With respect to count four, plaintiff claims that Holland and Eubanks falsely imprisoned her in violation of the Fourth Amendment because she was stopped on the highway by an unknown NPD officer to obtain keys to the vehicle and "understood" that she could not leave without surrendering the keys. Count four includes a conspiracy allegation.

Defendants argue that they are entitled to judgment on plaintiff's § 1983 claim for false imprisonment because plaintiff was not arrested. (Mot. at 78.) Plaintiff contends that judgment in defendants' favor is not appropriate because, although she was not arrested, she has alleged sufficient facts to demonstrate that she was detained in the absence of a legitimate purpose or legal process. (Opp'n at 107-08.)

> Claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a species of false imprisonment. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). False imprisonment is detention without legal process. *Id.* at 389.

*Blackwell v. Wenninger*, No. C-1-09-646, 2010 WL 654267, at *6 (S.D. Ohio Feb. 18, 2010).

---

[11] Compl. ¶¶ 63-66.

The only factual allegation in the complaint with respect to the stop is found at paragraph 27, where plaintiff claims that:

> 27. After Plaintiff delivered the vehicle to Newcomerstown P.D., she left in a separate vehicle. As she left the area, an Unknown Individual, an officer in the employ of Newcomerstown P.D., initiated a traffic stop. He stated that the sole basis of the stop was to demand any extra keys to the Sonata. Plaintiff was not issued a traffic citation, nor did the officer allege a traffic violation.

There are no factual allegations in the complaint that Holland and/or Eubanks were the officers that stopped her for the keys to the vehicle, or that she was detained by them. Indeed, she specifically alleges that she was detained by an unknown NPD officer.

Defendants are entitled to judgment on the pleadings with respect to plaintiff's claim for false imprisonment against Holland and Eubanks. This ruling does not address Fourth Amendment claims in count four with respect to conspiracy or the actions of unknown individuals.

### E.  Count Five[12]

In count five, plaintiff alleges that she was assaulted by Holland and Eubanks in violation of the Fourth Amendment because she was threatened with felony prosecution, arrest, and incarceration if she did not surrender the vehicle to the NPD and the keys to the vehicle to an unknown NPD officer, and was in "imminent apprehension of offensive contact, to wit: an unlawful arrest." (Compl. ¶¶ 68-70.) Defendants seek judgment on the pleading with respect to this claim on the grounds that plaintiff does not allege that she was ever subjected to the feared offensive contact—arrest—and threats alone are not actionable under § 1983. (Mot. at 79.)

---

[12] Compl. ¶¶ 67-71.

17

Plaintiff concedes that she was not arrested or physically touched, and that "any action for excessive force should fail[.]" (Opp'n at 108.) With respect to assault, however, plaintiff argues that the defendants' threats to arrest her constitute an unlawful effort to force her to surrender her property.

As discussed above in connection with count 1, threats of arrest do not constitute an infringement of a constitutional right and are not actionable under § 1983. *See Emmons*, 874 F.2d at 353. Defendants' motion with respect to plaintiff's federal claim in count five is granted.

## F. Count Six[13]

In count six, plaintiff alleges that the Village and Holland, in violation of the Fourth Amendment, "intentionally intruded upon the seclusion of Plaintiff's private financial affairs by obtaining, without privilege or consent, her financial records from Wells Fargo." (Compl. ¶¶ 73.) Count six is duplicative of plaintiff's Fourth Amendment claim in count one and has already been addressed by the Court. For the same reasons, defendants' motion with respect to count six is granted.

## G. Count Seven[14]

In count seven, plaintiff alleges that Holland, Eubanks, Barnes, and Addy violated the Fourth Amendment by seizing the vehicle and threatening criminal prosecution. Count seven is duplicative of plaintiff's Fourth Amendment claim in count one and has already been addressed by the Court. For the same reasons, defendants' motion with respect to count seven is granted.

---

[13] Compl. ¶¶ 72-75.

[14] Compl. ¶¶ 76-81.

### H. Qualified Immunity

Defendants contend that even if the Court determines that Holland and Eubanks are not entitled to judgment on plaintiff's § 1983 Fourth Amendment claims, they are entitled to qualified immunity. "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

The doctrine of qualified immunity shields government officials performing discretionary actions from civil damages liability if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quotation marks and citation omitted). "Qualified immunity provides police officers 'breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Stanton v. Sims*, ——U.S.——, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013)). Qualified immunity will apply "'if officers of reasonable competence could disagree on the issue.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); *see Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (qualified immunity will apply unless it is obvious that no reasonably competent official would have concluded that the action was lawful).

The Court employs a two-part test to determine if qualified immunity applies. First, the facts taken in a light most favorable to the party alleging injury must show that the officer's conduct violated a constitutional right. *Ewolski*, 287 F.3d at 501; *see Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, if a constitutional right was

violated, the Court must determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (quotation marks and citation omitted). If a plaintiff fails to establish either prong, she has failed to carry her burden, and judgment is appropriate for the defendant. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Since the failure of either prong is dispositive in favor of a defendant, the Court may address either prong first.[15] *See Pearson*, 555 U.S. at 236.

As a threshold matter, even construing the complaint's factual allegations in plaintiff's favor, she has failed to show that Holland and Eubanks violated her constitutional rights. Defendants argue that even if Holland and Eubanks violated plaintiff's constitutional rights, qualified immunity nevertheless applies because they were entitled to rely upon "the plethora" of case law holding that threats alone are not a cognizable Fourth Amendment claim, and that plaintiff does not have a privacy interest in financial documents held by a financial institution. (Mot. at 81-82.)

In response, "Plaintiff agrees that Defendants were entitled to rely 'upon the plethora of case law' relevant to their conduct. However, case law supports neither their arguments nor their conduct." (Opp'n at 112-13.) That statement, with no citation to authority, is plaintiff's entire argument that defendants' conduct violated a constitutional right that was so clearly established that a reasonable officer would have understood to refrain from that conduct. Plaintiff has failed to carry her burden with respect to the second prong of the qualified immunity analysis.

---

[15] On some occasions, it may be necessary to employ a third step, which is whether the plaintiff "'offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Thacker*, 182 F. App'x at 468 (quoting *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 901 (6th Cir. 2004)).

The Court's qualified immunity ruling does not address plaintiff's federal conspiracy claims because defendants did not move for judgment on those claims, and they are not now before the Court.

## I. Counts Eight[16] and Nine[17]

Counts eight and nine allege a *Monell* claim against the Village. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Plaintiff claims that the Village did not exercise reasonable care in hiring, training and supervising its law enforcement officers, and "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices" that resulted in the violation of plaintiff's constitutional rights.

A municipality may be subject to suit under § 1983 for the unconstitutional acts of its employees. In the absence of a constitutional violation, however, the municipality is not—as a matter of law—liable under § 1983. *Monell,* 436 U.S. at 691; *Howard v. Calhoun Cnty.*, 148 F. Supp. 2d 883, 891 (W.D. Mich. 2001) (citing *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279 (6th Cir. 2000) (the deprivation of a constitutional right is a threshold prerequisite to municipal liability under § 1983); *Napier v. Madison County, Kentucky,* 238 F.3d 739, 743 (6th Cir. 2001) (same)).

Even if there is a constitutional violation by its employee, a municipality is not automatically liable under § 1983. That is, a governmental entity is not liable under 42 U.S.C. § 1983 for an employee's conduct on the basis of *respondeat superior. Monell,* 436 U.S. at 691.

---

[16] Compl. ¶¶ 82-87.

[17] Compl. ¶¶ 88-91.

Rather, plaintiff must show that the governmental entity itself is the wrongdoer. *Collins v. City of Harker Heights,* 503 U.S. 115, 122, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). In order to do so, plaintiff must show that the municipality's policies, customs, and practices *caused* the constitutional violation. *Monell,* 436 U.S. at 694; *Embassy Realty Investments, Inc. v. City of Cleveland*, 976 F. Supp. 2d 931, 943 (N.D. Ohio 2013), *aff'd,* 572 F. App'x 339 (6th Cir. 2014) (citing *Miller v. Sanilac Cnty.,* 606 F.3d 240, 254-55 (6th Cir. 2010) (further citation omitted)).

With respect to plaintiff's failure to train claim, "[t]he inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 1197 (1989) (emphasis added)). In order to establish deliberate indifference, plaintiff "'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *St. John v. Hickey,* 411 F.3d 762, 776 (6th Cir. 2005)).  In the absence of a history of similar incidents, municipal liability under § 1983 for failure to train fails. *See id.* (citing *Miller v. Calhoun Cnty.,* 408 F.3d 803, 816 (6th Cir. 2005)).

Defendants maintain that they are entitled to judgment as a matter of law on counts eight and nine because plaintiff has not established that Holland or Eubanks violated plaintiff's constitutional rights, thus, plaintiff's *Monell* claim fails as a matter of law. The Court agrees. Having concluded that defendants are entitled to judgment on the pleadings with respect to plaintiff's federal claims against Holland and Eubanks, there is no basis for § 1983 liability of the Village. *Monell,* 436 U.S. at 691.

Even if the Court did find a constitutional violation, plaintiff's complaint does not identify the Village's customs, practices, or policies that allegedly caused the violation. Plaintiff's allegation that Holland authorized Eubanks to "bluff" plaintiff regarding the vehicle, or that Eubanks said that the NPD does not answer to the prosecutor and "does what it wants" does not, on its face, allege a history of similar incidents necessary to establish municipal liability under § 1983 for failure to train, *Slusher v. Carson*, 540 F.3d at 457, or the existence of a pattern of unconstitutional conduct necessary to establish a custom, policy, or practice of the Village upon which § 1983 liability may be based. *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014) (citing *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996)); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) ("clear and persistent pattern" required to show municipal-wide custom, policy, or practice causing unconstitutional conduct) (citing *Doe,* 103 F.3d at 508).

Plaintiff's allegations regarding the Village's liability revolve around a single situation involving the vehicle. The Village may not be held liable under § 1983 based on a *respondeat superior* theory. *D'Ambrosio*, 747 F.3d at 388-89 (citing *Monell,* 436 U.S. at 691).[18]

Thus, even if the Court had determined that Holland and Eubanks violated plaintiff's Fourth Amendment rights, the Village would nevertheless be entitled to judgment as a matter of law on counts eight and nine because the complaint's factual allegations do not support a claim for municipal liability.

---

[18] A single incident may be sufficient to establish municipal liability if Holland or Eubanks were municipal policy makers, but there are no allegations in the complaint, or alleged facts from which to infer, that they are. *See Miller*, 408 F.3d at 816 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986) (municipality may be liable under § 1983 for a single decision by its properly constituted legislative body)).

## V.  PLAINTIFF'S STATE LAW CLAIMS

### A.  Immunity of the Village

Defendants argue that they are entitled to judgment as a matter of law with respect to plaintiff's state law claims against the Village because, as a political subdivision engaged in a governmental function with respect to the events at issue in this lawsuit, the Village is immune from suit pursuant to Ohio Rev. Code § 2744 and none of the exceptions to immunity apply. (Mot. at 85-88.) Plaintiff concedes that the Village is immune from suit under Ohio Rev. Code § 2744, and is not liable for the state law claims raised in the complaint. (Opp'n at 103.)

Plaintiff's state law claims against the Village are dismissed.

### B.  Immunity of Holland and Eubanks

Holland and Eubanks contend that, like the Village, they are entitled to immunity under Ohio Rev. Code § 2744.03(A)(6). "It is established law that a 'police officer . . . cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Szefcyk v. Kucirek*, No. 15CA010742, 2016 WL 228601, at *2 (Ohio Ct. App. Jan. 19, 2016) (quoting *Cook v. Cincinnati,* 658 N.E.2d 814, 820-21 (Ohio Ct. App. 1995)). "We therefore begin with a presumption of immunity." *Cook*, 659 N.E.2d at 821.

Ohio Rev. Code § 2744.03(A)(6) provides:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* * *

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

    (a)  The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

    (b)  The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

    (c)  Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Defendants argue that none of the exceptions apply, thus, Holland and Eubanks are immune from suit with respect to plaintiff's state law claims. Plaintiff concedes that Holland and Eubanks were acting within the scope of their employment, but argues that plaintiff's factual allegations, including intentional false threats of criminal charges, arrest, and incarceration (*see* Compl. ¶¶ 24-28), demonstrate that Holland and Eubanks acted with a malicious purpose, and therefore are not entitled to immunity. (Opp'n at 104.)

The Ohio Supreme Court defines "wanton" conduct as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury[,]" and "reckless" conduct as "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the

circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012) (internal citations omitted).

"Malicious purpose" is the 'willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through . . . unlawful or unjustified' conduct." *Simon v. Mitchell*, No. OT–16–002, 2017 WL 730507 (Ohio Ct. App. Feb. 24, 2017) (quoting *Schoenfield v. Navarre*, 843 N.E.2d 234, 239 (Ohio Ct. App. 2005) (further citation omitted)). "Bad faith" connotes a 'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Id.*

"As a general matter, whether an employee is entitled to R.C. 2744.03(A)(6) immunity is ordinarily a question of law." *Pierce v. Woyma*, No. 97545, 2012 WL 3758631, at *3 (Ohio Ct. App. Aug. 30, 2012) (citing *Conley v. Shearer,* 595 N.E.2d 862, 869 (Ohio 1992)). "However, whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact." *Id.* Judgment in favor of defendants based upon immunity under § 2744.03(A)(6) is only appropriate if, construing the facts in a light most favorable to the plaintiff, it is clear that the conduct at issue fails to rise to the level of conduct that could be construed as malicious, in bad faith, or wanton and reckless. *See Long v. Hanging Rock*, No. 09CA30, 2011 WL 4584930, at *5 (Ohio Ct. App. Sep. 28, 2011) (citing *Theobald v. Univ. of Cincinnati,* 857 N.E.2d 573, 577 (Ohio 2006)).

Construing plaintiff's factual allegations concerning the 2016 events in plaintiff's favor, as the Court must at this stage of the ligation, the Court cannot determine as a matter of law that Holland and Eubanks are entitled to immunity under § 2744.03(A)(6).[19]

## C.  Count Two—Abuse of process

Defendants seek judgment on the pleadings with respect to plaintiff's state law claim for abuse of process. (Mot. at 77, 92.)

> Under Ohio law, "the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."

*Moore*, 612 F. App'x at 823-24 (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co.,* 626 N.E.2d 115, 118 (Ohio 1994)).

Defendant argues that plaintiff's state law claim fails because no legal proceedings were ever set in motion against plaintiff, and an abuse of process claim arises from actions taken during litigation after a complaint is filed. (Mot. at 77 (citing *Corsaro & Assocs. Co., L.P.A. v. Weston Hurd, L.L.P.*, No. 101534, 2015 WL 501260, at *3 (Ohio Ct. App. Feb. 5, 2015) ("Because an abuse of process claim arises from perverted actions taken during the litigation sometime after the complaint was filed, the cause of action generally does not accrue on the day the complaint was filed. Rather, an abuse of process claim accrues on the date of the allegedly tortious conduct.")).) In response, plaintiff states that "Defendants have accurately articulated the legal standards associated with an abuse of process claim in Ohio, as well as the facts set forth in

---

[19] The Court's qualified immunity ruling with respect to Holland and Eubanks does not pertain to count ten of the complaint or plaintiff's state law conspiracy claims because defendants did not move for judgment on those claims and they are not before the Court.

Plaintiff's Complaint. Accordingly, Plaintiff would merely defer to the Court relative to the state claim presented in Count Two." (Opp'n at 107.)

There are no allegations in the complaint that any legal proceedings were instituted against plaintiff. In order for plaintiff to avoid an adverse ruling on a motion for judgment on the pleadings, the complaint must set forth allegations sufficient to make out the elements of a right to relief.  Accordingly, as effectively conceded by plaintiff, defendants are entitled to judgment on her state law claim for abuse of process.

### D.  Count Three—Malicious prosecution

Like plaintiff's federal claim for malicious prosecution, defendants argue that the state law claim also fails. (Mot. at 85, 92.) In order to prevail on a claim for malicious prosecution under Ohio law, plaintiff must prove "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the [criminal] defendant." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 735 (Ohio 1990). Because plaintiff was never prosecuted, defendants argue that plaintiff's state law claim for malicious prosecution under state law must fail.

In response, plaintiff states that "[d]efendants have accurately articulated the legal standards associated with both § 1983 civil claims and Ohio claims for malicious prosecution, as well as the facts set forth in [p]laintiff's Complaint. Accordingly, [p]laintiff would merely defer to the Court relative to the state and federal claims presented in Count Three." (Opp'n at 107.)

Because plaintiff's complaint does not make out the elements of a malicious prosecution claim, which is effectively conceded by plaintiff, defendants are entitled to judgment on this claim.

### E.  Count Four—False arrest

In Ohio, the elements of false imprisonment and false arrest are the same; the only difference being that false arrest involves a law enforcement officer, while false imprisonment involves a private citizen. *Rogers v. Barbera,* 164 N.E.2d 162, 164 (Ohio 1960) ("[F]alse arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise.").

> False imprisonment/false arrest is "to confine one intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short." *Feliciano v. Kreiger,* 50 Ohio St. 2d 69, 71, 362 N.E.2d 646 (1977); *see also Thacker v. City of Columbus,* 328 F.3d 244, 261 (6th Cir. 2003) (quoting *Faulkner v. Faulkner,* 2000 WL 5910, *1 (Ohio Ct. App., Jan 7, 2000)) ("The requisite elements for false arrest are (1) a detention of the person, and (2) an unlawful detention.").

*Kaylor v. Rankin*, 356 F. Supp. 2d 839, 854–55 (N.D. Ohio 2005); *see also, Saucedo-Carrillo v. United States*, 983 F. Supp. 2d 917, 922-23 (N.D. Ohio 2013) (the elements of the two torts are nearly identical, requiring: (1) an intentional detention (2) taking place in a limited area (3) for any appreciable time, however short (4) without a lawful privilege and (5) without the detainee's consent), *aff'd,* 635 F. App'x 197 (6th Cir. 2015).

Because plaintiff asserts count 4 against NPD officers, not private citizens, the state law claim must be for false arrest, rather than false imprisonment. There are no factual allegations in the complaint to support plaintiff's claim of false arrest against Holland and Eubanks—indeed, plaintiff alleges that she was stopped for her keys by an unknown NPD officer. Plaintiff does not allege that she was detained by Holland or Eubanks. Accordingly, plaintiff's state law claim for false arrest against Holland and Eubanks fails, and defendants are entitled to judgment.

**F. Count Five—Assault**

In Ohio, the tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact. *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio Ct. App. 1993) (citation omitted); *Gerber v. Veltri*, 203 F. Supp. 3d 846 (N.D. Ohio 2016) (quoting *Smith*, 614 N.E.2d at 1154).

Defendants argue that they are entitled to judgment on this claim because plaintiff has not alleged any facts to support a finding that she reasonably believed she would be arrested or prosecuted by Holland or Eubanks. (Mot. at 92-93.) In opposition, plaintiff acknowledges that defendants accurately recite the elements of an Ohio claim for assault, but then quotes a case regarding the elements of a claim for battery. (Opp'n at 108-09.) Plaintiff argues that she has set forth sufficient facts that she was repeatedly threatened and forced to surrender her property, and that she was unlawfully stopped to surrender her keys, all of which place her in fear of unlawful arrest. But these allegations, which relate to conduct by others in 2015, do not relate to Holland or Eubanks. (*See* Compl. ¶¶ 24-27.)

Holland made multiple telephone calls to plaintiff in February 2016, allegedly threatening her with arrest and prosecution in connection with the vehicle. (*Id.* ¶ 39.) When plaintiff's attorney contacted Holland about these telephone calls, however, Holland informed him that

neither Holland nor Eubanks intended to arrest plaintiff. (*Id.* ¶ 43 (Holland admitted there was no warrant and he had approved Eubanks to "bluff" plaintiff); *id.* ¶ 45 (Holland stated he would not allow Eubanks to press charges).) At the same time, plaintiff's attorney contacted the prosecutor, who "again indicated" that a criminal case would not be pursued. (*Id.* ¶ 41; *see also id.* ¶ 30 and Doc. No. 1-3.) Notwithstanding the alleged threats made by Holland and Eubanks, plaintiff and/or her attorney, upon inquiry, were informed that she would not be arrested or prosecuted in connection with the vehicle. Thus, plaintiff's allegations do not support a finding that plaintiff reasonably believed Holland's and Eubanks' threats of arrest and prosecution.

In addition, Holland and Eubanks did not have the apparent ability to commit the offensive touching. Plaintiff's only allegations regarding her contact with Holland and Eubanks are that Holland made multiple telephone calls to her, and that her attorney had conversations with both Holland and Eubanks. (*Id.* ¶¶ 39-45.) Plaintiff does not allege any face-to-face contact with either Holland or Eubanks. Her allegations regarding telephone conversations do not support a finding that Holland or Eubanks had the apparent ability to commit the offensive touching by arresting her, or that plaintiff reasonably believed they did.

Thus, the allegations in plaintiff's complaint do not establish the elements of her state law claim for assault, and defendants are entitled to judgment.

### G.  Count Six—Invasion of privacy

Plaintiff alleges in count six that Holland invaded her privacy under Ohio law by obtaining her financial records from Wells Fargo.[20] The parties agree that in order to establish this claim plaintiff must show that the area Holland intruded upon was private, the intrusion was unwarranted, and that the intrusion was offensive or objectionable to the reasonable person. (Mot. at 93; Opp'n at 110.) *Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 703 (N.D. Ohio 2005) (citing *Contadino v. Tilow,* 589 N.E.2d 48, 53 (Ohio Ct. App. 1990)). "The invasion of the right of privacy may be defined ... as the wrongful intrusion into one's private activities in such manner as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* (quoting *Housh v. Peth,* 133 N.E.2d 340, 343 (Ohio 1956)).

In Ohio, a totality of the circumstances analysis is the test for determining whether an individual has a reasonable expectation of privacy. *Sollenberger*, 173 F. Supp. 3d at 634 (citing *Rakas v. Illinois*, 439 U.S. 128, 143–44, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *Lazette v. Kulmatycki*, 949 F.Supp.2d 748, 761 (N.D. Ohio 2013)). "The intrusion 'must be of such a character as would shock the ordinary person to the point of emotional distress.'" *Sollenberger*, 173 F. Supp. 3d at 635 (quoting *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 905 (S.D. Ohio 1999) (quoting *Haller v. Phillips*, 591 N.E.2d 305, 307 (1990) (stating it is the same standard as applied to intentional infliction of emotional distress claims))). Examples of intrusion

---

[20] In Ohio, the tort of invasion of privacy encompasses four causes of action: (1) intrusion into plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts; (3) publicity that places plaintiff in a false light; and (4) appropriation of plaintiff's name or likeness. *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 634 (S.D. Ohio 2016) (citation omitted).

on seclusion include watching or photographing a person through the windows of his home or wiretapping his telephone. *See Mowry v. Anthony Wayne Local Sch. Dist. Bd. of Educ.*, No. CI 00-3628, 2002 WL 33031490, at *6 (Ohio Com. Pl. Aug. 15, 2002) (citing *Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291, 1294 (Ohio Ct. App. 1985)).

Plaintiff's factual allegations establish that there was a dispute between plaintiff, Barnes, and Addy regarding the vehicle, which included issues of whether the vehicle had been stolen by plaintiff. Resolution of those issues required investigation, and were investigated by the prosecutor, including seeking records from Wells Fargo concerning the vehicle. Indeed, plaintiff herself acknowledges that legal action may be required to resolve the issues. (Compl. ¶ 37 ("Plaintiff remarked that she would keep paying the costs [for the vehicle] until the matter was decided in court.").) Plaintiff has alleged no facts that, construed in her favor, would suggest that obtaining information from Wells Fargo regarding the vehicle was unwarranted. Indeed, given the nature of the dispute over the vehicle described in the complaint, the request to Wells Fargo for records in connection with resolution of that dispute is not of such a character that the ordinary person would be shocked to the point of emotional distress. *Sollenberger*, 173 F. Supp. 3d at 634. Finally, plaintiff had no reasonable expectation of privacy in the records that she provided to Wells Fargo in connection with the vehicle loan. *See Miller*, 425 U.S. at 440.

Holland is entitled to judgment on plaintiff's state law claim for invasion of privacy.

### H.  Count Seven—Trespass to chattels; Theft

Plaintiff alleges in count seven that Holland, Eubanks, Barnes, and Addy deprived her of the vehicle and took the vehicle into custody in violation Ohio Rev. Code § 2913.02(A), and are guilty of theft and trespass to chattels.

"A trespass to chattel occurs when one intentionally dispossesses another of their personal property." *Conley v. Caudill*, No. 02CA697, 2003 WL 21278885, at * 2 (Ohio Ct. App. May 30, 2003). Under Ohio law, theft occurs when,

> [W]ith purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
>> (1) Without the consent of the owner or person authorized to give consent;
>> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>> (3) By deception;
>> (4) By threat;
>> (5) By intimidation.

Ohio Rev. Code § 2913.02(A).

> As used in § 2913.02(A), "deprive" means to:
>
> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
>
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
>
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

Ohio Rev. Code § 2913.01(C).

The only factual allegations in the complaint regarding Holland and Eubanks with respect to the vehicle are that they engaged in telephone conversations with plaintiff and her attorney in which they allegedly threatened plaintiff with prosecution regarding the vehicle. According to the complaint, the vehicle was in the possession of plaintiff at the time of the telephone conversations. (*See Compl*. ¶ 37.) Moreover, plaintiff does not allege that the threats by Holland and Eubanks deprived or dispossessed her of the vehicle, only that their threats allegedly caused

her to "cease use of the vehicle." (*Id.* ¶ 78.) Plaintiff does not cite a single case for the proposition that plaintiff's decision to stop using a vehicle in her possession based on alleged threats by Holland and Eubanks constitutes theft or trespass to chattels under Ohio law.

Defendants are entitled to judgment on count seven with respect to plaintiff's state law claim.

## VI. CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth by the Newcomerstown defendants in their memorandum and reply in support of their motion, defendant Newcomerstown Police Department is dismissed from this action as to all claims. Defendant Village of Newcomerstown is dismissed from this action with respect to plaintiff's state law claims.

Additionally, the Newcomerstown defendants' motion for partial judgment on the pleadings is granted on plaintiff's federal and state law claims with respect to counts 1, 2, 3, 4, 5, 6, 7, 8, and 9, except as to plaintiff's conspiracy claims.

In accordance with the Court's instructions, plaintiff is ordered to show cause why defendants Addy and Barnes should not be dismissed from this action.

**IT IS SO ORDERED**.


Dated: March 31, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**